**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JAMES M. LAMONTE,**

          **Plaintiff,**               **CIVIL ACTION NO. 15-14247**

      **v.**                     **DISTRICT JUDGE ARTHUR J. TARNOW**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

          **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff James Lamonte seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to Social Security benefits for his mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff filed a Reply. (Docket no. 19.) Also before the Court is Plaintiff's Motion for Order Permitting the Supplementing of the Transcript. (Docket no. 16.) Defendant responded (docket no. 18), and Plaintiff filed a Reply (docket no. 20.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Order Permitting the Supplementing of the Transcript (docket no. 16) be **GRANTED**. It is also

recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be **DENIED** and

Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**.

## II.      PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability and disability insurance benefits with

a protective filing date of December 11, 2012, alleging that he had been disabled since June 30,

2011.  (TR 14; 94-97.)  The Social Security Administration denied Plaintiff's claims on March 6,

2013, and Plaintiff requested a *de novo* hearing.  (TR 61-64, 67-68.)  On April 18, 2014, Plaintiff

appeared with a representative and testified at the hearing before Administrative Law Judge

(ALJ) Timothy Christensen.   (TR 31-49.)   In a June 25, 2014 decision, the ALJ found that

Plaintiff was not entitled to benefits because he was capable of performing a significant number

of jobs in the national economy.  (TR 23-24.)  The Appeals Council declined to review the ALJ's

decision (TR 1-5), and Plaintiff commenced this action for judicial review.  The parties then filed

cross motions for summary judgment, which are currently before the Court.  (Docket nos. 14,

15.)  Plaintiff responded to Defendant's Motion.  (Docket no. 19.)  Plaintiff also filed a Motion

for Order Permitting the Supplementing of the Transcript (docket no. 16), to which Defendant

responded (docket no. 18), and Plaintiff filed a Reply (docket no. 20.)

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 3-13) and Defendant (docket no. 15 at 4-12) each set out a

detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony.

The ALJ also discusses Plaintiff's medical record and hearing testimony throughout his decision.

(TR 16-23.)   Having conducted an independent review of Plaintiff's medical record and the

hearing transcript, the undersigned finds that there are no material inconsistencies among these

recitations of the record.   Therefore, the undersigned incorporates the factual recitations by

reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

There is a preliminary issue relating to the medical record evidence in this case.  In compiling the transcript for the court's review, the Appeals Council excluded a single page from a questionnaire completed by Plaintiff's long-time treating physician, Dr. Mumtaz George, M.D., for the stated reason that "it did not pertain to the claimant."  (TR 255.)  In his Motion for Order Permitting the Supplementing of the Transcript (docket no. 16), Plaintiff submits the  excluded page and presents an affidavit from Plaintiff's attorney's legal secretary, Ms. Maria Carmon, explaining that she erroneously neglected to change the client's name on that particular page before submitting the questionnaire to Dr. George to complete, but that Dr. George's answers on that page in fact do relate to Plaintiff.  (Docket no. 16-1.)  Plaintiff seeks to include the page in the record for the court's consideration.[1]  Defendant objects, arguing that there is no authority to support the supplementation of the record by the court after it has been certified by the Commissioner.  (Docket no. 18.)   Defendant also disputes that the page actually relates to Plaintiff.

It is apparent from the document that the page pertains to Plaintiff.  It was signed by Dr. George the same day as the other pages in the questionnaire, and these other pages do identify Plaintiff as the patient.  (*See* Docket no. 16-4 at 4-8).  Moreover, the undersigned has no reason to doubt the veracity of Ms. Carmon's affidavit.  And, as both parties note, when a claimant commences an action for judicial review, the Commissioner is required to "file a certified copy of the transcript of the record including *the evidence upon which the findings and decision*

---

[1] Plaintiff actually asks the court to "redact the incorrect information and add this missing page to the record in this case."  The undersigned has considered the page as it was filed in the Motion.  (Docket no. 16-4 at 4.)  The Motion and attachments are also protected from public viewing, as are all filings in Social Security cases.  It is therefore unnecessary to redact the document or to otherwise take any action to "add this missing page to the record." *Id.*

*complained of are based*." 42 U.S.C. § 405(g). In this case, the ALJ expressly relied on the excluded page when making his determination,[2] as is evidenced by the fact that he cites to it on page 8 of 12 of his decision. (*See* TR 21 (citing pages 43 and 45 of Exhibit 6F, which is the questionnaire at issue).) The undersigned therefore recommends that Plaintiff's Motion for Order Permitting the Supplementing of the Transcript (docket no. 16) be granted, and that the court also consider the page to the extent necessary to review this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

Turning to the substantive issues, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 30, 2011; and that Plaintiff suffered from the following severe impairments: depression, obsessive compulsive disorder (OCD), and anxiety disorder. (TR 16.) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 16-19.) The ALJ then found that Plaintiff's allegations regarding the extent of his symptoms were not "entirely credible" and that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: . . . would require simple, routine tasks with only occasional changes in the work setting and only brief and superficial contact with others.

(TR 19.)

The ALJ questioned a qualified Vocational Expert (VE) regarding whether there would be any jobs available for a person with Plaintiff's RFC. (TR 49-50.) The VE testified that there would be, and gave examples of simple janitorial work, housekeeping/office cleaning, and

---

[2] The ALJ ultimately rejected Dr. George's opinion, however, as discussed in greater detail below.

benchwork including sorting, assembly and product finishing.   (TR 46.)   Subsequently, in reliance on the testimony of the Vocational Expert (VE), the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.   (TR 23-24.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 30, 2011, through the date of the decision.   (TR 24.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.   It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.   *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole.   *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).   If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if

substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

6

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). The court can only "reverse the [ALJ's] decision and award benefits . . . if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

Plaintiff seeks a reversal of the ALJ's decision and an immediate award of benefits (or, in the alternative, a remand for further proceedings) under sentence four on the grounds that (1) the ALJ improperly assigned "no weight" to the opinion of Dr. Mumtaz George, Plaintiff's long-time treating physician; (2) the ALJ's credibility determination is not supported by substantial evidence; and (3) the Commissioner "failed to sustain [his] burden of establishing that there is other work in the national economy that Mr. Lamonte can perform." (Docket no. 14 at 13-26.)

### 1.    *The Treating Physician Rule*

Plaintiff challenges the fact that the ALJ gave no weight to the opinion of his treating physician, Dr. Mumtaz George, M.D., an internal medicine specialist who began treating

Plaintiff in 1992, and who currently sees Plaintiff approximately five times per year.  Dr. George diagnosed Plaintiff with OCD, anxiety, depression, insomnia, and rectal bleeding.  (TR 256.)  In response to a questionnaire submitted by Plaintiff's counsel specifically regarding Plaintiff's anxiety, Dr. George indicated that Plaintiff has panic attacks twice per week and that there are "[m]edically documented findings" showing that Plaintiff's anxiety is accompanied by motor tension, apprehensive expectation, and vigilance and scanning, as well as a persistent irrational fear of "medical situation[s]."  (TR 253.)  He also checked "yes" when asked whether there were medically documented findings showing "marked difficulties in maintaining social functioning," and "deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner . . . ."  (TR 254.)  Finally, Dr. George opined that Plaintiff had "[r]epeated episodes of deterioration or decompensation," and was unable to "function independently" outside of his home.  (Docket no. 16-4 at 4.)

In a second questionnaire, Dr. George again listed Plaintiff's medical diagnoses, but gave no response when asked to "list the medical signs and/or laboratory findings . . . which support your diagnos[es]."  (TR 256.)  Also in the second questionnaire, Dr. George stated that Plaintiff's medications, which include Ativan and Xanax for his anxiety, as well as Zofran, Clomipramine, and Vitamin D, cause no side effects.  (TR 257.)  Regarding Plaintiff's exertional limitations, Dr. George opined that Plaintiff is unable to perform light or even sedentary work.  (TR 258.)

An ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment relationship and the

8

frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight.  *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not

hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Regarding Dr. George's opinion, the ALJ stated:

The claimant's attorney submits that Dr. George and Dr. Arends conclude that the claimant's impairments meet listing 12.06 because his anxiety results in motor tension, apprehension expectation and vigilance and scanning with irrational fear of his medical condition and panic attacks twice per week resulting in market limitation in social functioning, concentration persistence and pace, repeated episodes of decompensation and deterioration and inability to live independently outside his home. The claimant's attorney states that Dr. George's office visits support his opinion. I find that the claimant has mild restrictions of activities of daily living and moderate limitations in social functioning and concentration, persistence and pace and no repeated episodes of decompensation and deterioration . . . . Further, the claimant has not alleged that he is unable to live independently outside his home. In fact, the consultative examiner noted that he attended the examination alone and unaccompanied.

(TR 16 (internal citations omitted).)

Dr. George is [Plaintiff's] treating physician; [Plaintiff] testified that he treated with Dr. Arends for his mental conditions. Therefore, I assign no weight to Dr. George's opinion since Dr. George appears to be addressing [Plaintiff's] mental limitations, which are best addressed by his psychiatrist, Dr. Arends. Further, the record does not support the need for any exertional limitations as set forth by Dr. George.

(TR 21-22.)

Plaintiff does not challenge the ALJ's rejection of Dr. George's opinion regarding Plaintiff's exertional limitations; Plaintiff only challenges the ALJ's rejection of Dr. George's opinion regarding Plaintiff's anxiety. Plaintiff contends that the medical evidence of record is not inconsistent with Dr. George's opinion and that the ALJ erred in rejecting Dr. George's opinion simply because Dr. George is not a psychiatrist, particularly given Plaintiff's

longstanding relationship with Dr. George.   (Docket no. 14 at 15-21.)   The undersigned disagrees.

First, it isn't clear what medical evidence of record supports Dr. George's finding that Plaintiff's anxiety is accompanied by motor tension, apprehensive expectation, and vigilance and scanning, as well as a persistent irrational fear of "medical situation[s]," or that Plaintiff has "marked difficulties in maintaining social functioning," "deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner," and "[r]epeated episodes of deterioration or decompensation."   (TR 253-54; Docket no. 1604 at 4.)

Plaintiff relies, in particular, on the medications he takes, the treatment notes from Dr. George, the treatment notes from Dr. Lisa Silverman, PhD (state consultative psychologist), and the opinion of Dr. Douglas Arends, M.D., a psychiatrist.   However, the ALJ considered all of this evidence when evaluating Dr. George's opinion.   For example, the ALJ assigned "limited weight" to Dr. Arends' opinion, on the basis that Dr. Arends' opinion was based on only one visit with Plaintiff.[3]   (TR 22-23.)   As Plaintiff points out, Dr. Silverman did diagnose Plaintiff with OCD, and noted that he was "highly anxious" throughout his examination and that he did not appear to "exaggerate or minimize his symptoms."   (TR 194-95.)   Nevertheless, as the ALJ emphasized, Dr. Silverman also found that Plaintiff was "cooperative" (TR 18), and she assigned Plaintiff a GAF of 56, which reflects only "*moderate* difficulty in social, occupational, or school functioning."   (TR 17, 195 (emphasis added).)   The ALJ also specifically cited Dr. Silverman's notes that, during the examination, Plaintiff "denied requiring assistance to prepare for his basic needs," and further "drove himself to the evaluation."   (TR 17; 191-92.)

As for Plaintiff's medications, the ALJ credited Plaintiff's testimony that they cause Plaintiff to feel drowsy, despite the fact that Dr. George stated they caused Plaintiff no side

---

[3] Plaintiff does not challenge the ALJ's decision to assign limited weight to Dr. Arends' opinion.

effects.   (TR 18, 257.)   Plaintiff argues that the "medications alone confirm significant limitations."   (Docket no. 14 at 17.)   It is undisputed that Plaintiff has long been treated for mental health conditions; however, the mere fact that he is prescribed several medications to aid in the management of his conditions does not confirm that Plaintiff is limited to such an extent that he is unable to work.

Finally, Plaintiff stresses that Dr. George's treatment notes "confirm that Mr. Lamonte presented with anxiety at nearly every visit, along with complaints of depression, shortness of breath and frequent urination, for which he [was] prescribed Ativan, Anafranil, and Xanax." (Docket no. 14 at 17.)  Plaintiff cites to a number of pages of Dr. George's notes which show that Plaintiff has a history of "depression . . . and constant urination" (TR 212, 233, 12/31/12 appointment); he receives the listed medications from Dr. George (TR 214, 235, 12/31/12 appointment); he "complain[s] of anxiety and frequency of urination" (TR 215, 11/21/12 appointment); he has "anxiety" (TR 220, 11/12/11 appointment; TR 222, 5/9/11 appointment); that he was "here for Xanax refill" (TR 223, 5/9/11 appointment); that he "wants RX for CATscan and RX for xanax" (TR 228, 3/12/11 appointment); that he is "here for a refill on all currently taken meds" and complaints of "blood in stool" (TR 236, 2/15/13 appointment); and that he was "here for RX refill on Xanax, Ativan, Vit D and Anafranil," and has anxiety and opioid dependence (TR 244, 7/11/13 appointment).  Dr. George's treatment records also contain notes from Dr. Marie Ruth Greenspan, PhD., a behavioral health consultant who diagnosed Plaintiff with OCD, insomnia, and depression.  (TR 219.)

This evidence undoubtedly reflects that Plaintiff has a history of mental health issues, but it does not support Dr. George's opinion regarding the extent of Plaintiff's limitations due to his anxiety.  To the contrary, in addition to the evidence discussed above, the record reflects that

Plaintiff has never received in-patient treatment for his psychiatric issues (TR 17), and although he was anxious during the consultative exam, the results of his "concentration tests" were "fine." (TR 20.)  Plaintiff was able to "repeat seven numbers forward and four backward," and could recall "two of three objects three minutes later."  (TR 20.)  Dr. Greenspan noted that Plaintiff is only "somewhat isolative," and is "well-related and speaks readily and fluently about himself and his history."  (TR 218.)  And Dr. George's notes also reflect that Plaintiff presented at some of his appointments as "normal" (TR 237), and not anxious or agitated (TR 213).  The ALJ's conclusion that Dr. George's opinions regarding Plaintiff's limitations were inconsistent with the medical evidence of record is therefore supported by substantial evidence.

In addition, the undersigned finds that the ALJ did not commit reversible error in relying primarily on the fact that Dr. George is not a psychiatrist when weighing the factors and assigning no weight to Dr. George's opinion.  The only factor that Plaintiff appears to argue that the ALJ improperly failed to consider and address in his opinion is the "length of the treatment relationship and the frequency of examination" factor.  *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  Plaintiff is correct that the ALJ did not expressly consider this factor, but he was clearly aware of the length and frequency of the treatment relationship.  (*See* TR 21.)  It is also clear that the ALJ considered Dr. George's specialty in internal medicine (rather than psychiatry), and the fact that Dr. George's opinion was not well-supported, to be much more important factors in this case.  The undersigned finds these are "good reasons," and that the ALJ's failure to explicitly address the other factors does not constitute reversible error in this case, particularly because Plaintiff's disability claim is based entirely on his mental health conditions.

One last point Plaintiff makes is that, although Dr. George was not a psychiatrist, he "specifically treated Mr. Lamonte's anxiety and OCD for many years and prescribed his medications including Ativan, Xanax and Clomipramine." (Docket no. 14 at 16.) It is true that Dr. George prescribed these medications, but it isn't clear what other "treatment" Dr. George administered. Indeed, there is a note, dated May 1, 2012, in Dr. Greenspan's treatment records (which are contained within Dr. George's treatment records according to Plaintiff), suggesting that Plaintiff see a psychiatrist. (TR 229.) The fact that Dr. George prescribed medication for Plaintiff's conditions does not change the undersigned's analysis regarding the ALJ's rejection of Dr. George's opinion of Plaintiff's limitations due to Plaintiff's anxiety.

### 2. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff next argues that the ALJ's credibility determination is not supported by substantial evidence.

An ALJ's credibility determination is to be afforded great weight. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). A finding that a claimant is not credible, or is only partially credible, however, must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

SSR 96–7p.[4]   Further, to the extent that the ALJ found that Plaintiff's symptoms are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying the factors). Nevertheless, "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

Plaintiff disputes three of the ALJ's findings regarding credibility; specifically, Plaintiff contends that:

---

[4] SSR 96-7p was superseded by SSR 16-3p. SSR 16-3p eliminates use of the term "credibility," from regulatory policy, to "clarify that subjective symptom evaluation is not an examination of an individual's character," and to "more closely follow . . . regulatory language regarding symptom evaluation." SSR 16-3p, *available at* 2016 WL 1119029, at *1 (March 16, 2016). SSR 16-3p took effect on March 16, 2016, nearly two years after ALJ Christensen issued his decision in this matter, and therefore it does not apply here. *See Murphy v. Comm'r*, No. 1:15-cv-126, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016) (citations omitted) (concluding SSR 16-3p should not be retroactively applied).

> The ALJ discredited Mr. Lamont[e] because "he has told his doctor that his depression has improved"; it "appears" Mr. Lamonte "may have sought and obtained treatment with Dr. Arends for the sole purpose of establishing entitlement to disability, which lessens the claimant's credibility"; and the records do not support his testimony that he treats once a month with Dr. Arends.  (Tr. 21, 22).  The ALJ's findings are not supported by substantial evidence."

(Docket no. 14 at 22.)

Even if the findings cited by Plaintiff are not supported by substantial evidence, the undersigned notes that the ALJ also discussed other relevant factors in his decision,[5] including the fact that Plaintiff has never received inpatient psychiatric treatment (TR 17), has only "mild restrictions of activities of daily living," and "moderate limitations in social functioning.  (TR 16.)  This finding is supported by the opinion of Dr. Lisa Silverman,[6] and, to an extent, by Plaintiff's own testimony describing his shower and parking rituals, and how he manages the shower rituals by showering every other day.  Plaintiff argues that the same testimony actually shows that his rituals are "debilitating," but he doesn't explain how.  The ALJ also discusses how Plaintiff testified that he could not do benchwork or monitor a security camera on a full time basis because "he is so used to being outside" as a pizza delivery driver, and because he "does not like to be 'cooped up at all.'"  (TR 19 (quoting TR 44).)  Plaintiff nevertheless testified that since he quit his job, he spends a lot of his time watching TV and "get[ting] on the computer." (TR 43.)

---

[5] In his Reply, Plaintiff takes issue with the fact that some of the ALJ's discussion relevant to Plaintiff's credibility appears in parts of the ALJ's decision other than the section dedicated to Plaintiff's credibility. The undersigned rejects this argument; Plaintiff cites no authority which holds that an ALJ cannot weigh and assess a claimant's credibility throughout a decision.

[6] Plaintiff points out that Dr. Silverman found Plaintiff "did not appear to exaggerate or minimize his difficulties."  (TR 193.)  However, Dr. Silverman also evaluated Plaintiff's difficulties and found them to be only moderate, as reflected in her GAF score of 56.  (TR 195.)  She also opined that he was cooperative, motivated, had fair insight, had a "spontaneous and organized" "stream of mental activity," and that his interests did not appear "unrealistic" or "grandiose," and she recorded in her notes that he denied assistance with attending the appointment and in his daily life.  (TR 191-95.)

16

Moreover, the ALJ's findings that Plaintiff disputes are supported by substantial evidence in the record. Dr. Arends' progress notes *do* state that Plaintiff's depression improved with medication (although his OCD had not improved). (TR 265.) Dr. Greenspan's progress notes confirm that Plaintiff was doing better with an increased dose of his medication, and she even indicates that "he is less obsessive" after beginning the increased dose. (TR 243.) And, Dr. Arends's treatment notes *do* state that Plaintiff seemed "too preaware" on the topics of "controlled substances" and "disability mentality – language – culture." (TR 201.) The ALJ's interpretation of this note as indicating that Dr. Arends believed Plaintiff "sought and obtained treatment with Dr. Arends for the sole purpose of establishing entitlement to disability," is not unreasonable. (TR 21.) It is at least arguable that Dr. Arends' notes reflect a concern that Plaintiff had improper motives for seeking out treatment. In addition to the above quoted statement, elsewhere in his notes Dr. Arends states again that Plaintiff was "very aware [of] categories of controlled substances, [and] has vocab & statements suggestive of 'disability [illegible]." (TR 210.)

The record also supports the ALJ's finding regarding the number of visits Plaintiff had with Dr. Arends. Plaintiff testified that, at the time of the hearing, he was seeing Dr. Arends "once a month." (TR 44.) The ALJ found that "the records submitted from Dr. Arends do not support this amount of treatment," and discounted Plaintiff's credibility as a result, because Plaintiff's initial visit was on November 26, 2012, followed by two visits in November 2013, and one visit in January 2014, and then no visits from January 2014, through April 18, 2014, the date of the hearing. (TR 22.) The record reflects the ALJ's assessment of the amount of treatment Plaintiff received from Dr. Arends. (TR 203, 260, 262, 265.) Plaintiff saw Dr. Arends "once a month" for a short, three-month period of November 2013 through January 2014; however, the

record does not reflect that the ALJ erred in finding that Plaintiff was not seeing Dr. Arends "once a month" at the time of the hearing, or during the year prior to that three-month period.

The ALJ provided specific reasons for discounting Plaintiff's credibility in his decision, applying the factors set forth in 20 C.F.R. § 416.929(c)(3).  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight.  The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

### 3.    The ALJ's Step 5 Determination

Last, Plaintiff argues that the Commissioner "failed to sustain her burden of establishing that there is other work in the national economy that Mr. Lamonte can perform," because "the ALJ relied on the VE's testimony in response to a question which failed to include all of the limitations included in the record."  (Docket no. 14 at 24.)

As stated above, the Commissioner has the burden of proof on the fifth step of the sequential analysis, "proving that there is work available in the economy that the claimant can perform."  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

Plaintiff takes issue with the fact that the ALJ assigned "great weight" to the opinion of the state agency examiner, Dr. Ashok Kaul, M.D., but allegedly did not incorporate all of Dr. Kaul's functional limitations into the hypothetical question posed to the VE.  Dr. Kaul opined that Plaintiff "retains the mental ability to engage in work related tasks involving a limited need for sustained concentration and pace, limited need for interaction with others, and only occasional changes in the work-setting.  He is capable of low stress simple, routine 1-2 step unskilled tasks." (TR 57.)  The ALJ's hypothetical question asked the VE to:

> [A]ssume a hypothetical . . . individual of the same age, education, and work background as Mr. Lamonte.  This individual does not have any exertional limitations, but would require simple, routine tasks with only occasional changes in the work setting, and only brief and superficial contact with others.

(TR 45.)  The VE testified that such an individual could perform "simple janitorial work," "housekeeping/office cleaning," or benchwork, including "sorting, assembly, various types of product processing or product finishing." (TR 46.)

Although the hypothetical does not use the words "low stress environment," the undersigned finds that it adequately captures Plaintiff's limitations as described by Dr. Kaul. Plaintiff does not explain how the limitations the ALJ did expressly include—simple, routine tasks with only occasional changes in the work setting, and only brief and superficial contact with others—do not sufficiently account for Plaintiff's need for a low stress environment.  The janitorial and house/office cleaning jobs, in particular, which do not involve production quotas, would accommodate this need, especially when they involve "only occasional changes in the work setting, and only brief and superficial contact with others."  *See Seevers v. Comm'r of Soc. Sec.*, No. 2:14-cv-00511, 2015 WL 2131104, at *5 (S.D. Ohio May 7, 2015) (comparing two definitions of "low stress work environment": "free of fast-paced production or quota requirements," and "relatively static work environment") (citations omitted).

Because the ALJ's hypothetical to the VE adequately accounted for Plaintiff's limitations as described by Dr. Kaul,[7] the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion regarding the availability of jobs for Plaintiff. Plaintiff's Motion should be denied in this regard.

## VI.   CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Order Permitting the Supplementing of the Transcript (docket no. 16) be **GRANTED**. It is also recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**.

<u>**REVIEW OF REPORT AND RECOMMENDATION**</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

---

[7] The undersigned notes that "the ALJ need not incorporate every aspect of [a medical expert's] report into the RFC or hypothetical questions." *McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *4 (E.D. Mich. Mar. 27, 2013) (citation omitted). The ALJ did not make an independent finding that Plaintiff requires a low stress environment, although he does mention Dr. Kaul's findings on page 8 of 12 of his administrative decision. (TR 21.) The undersigned's analysis of the ALJ's decision on this issue assumes that Plaintiff does indeed require a low stress work environment.

Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 21, 2017          s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE



### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 21, 2017          s/ Lisa C. Bartlett
                                  Case Manager