UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES M. LAMONTE,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

Case No. 15-14247

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**ORDER ADOPTING REPORT AND RECOMMENDATION [21]; OVERRULING PLAINTIFF'S OBJECTION [22]; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14]; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]; AND GRANTING PLAINTIFF'S MOTION FOR ORDER PERMITTING THE SUPPLEMENTING OF THE TRANSCRIPT [16]**

Plaintiff James Lamonte seeks judicial review of the decision of an Administrative Law Judge ("ALJ") denying his application for disability benefits. Plaintiff filed a Motion for Summary Judgment [Dkt. 14] on May 7, 2016. Defendant filed a Motion for Summary Judgment [15] on June 6, 2016. Plaintiff filed a Motion for Order Permitting the Supplementing of the Transcript [16] on June 8, 2016.

On February 21, 2017, the Magistrate Judge issued a Report and Recommendation [21] recommending that the Court grant Plaintiff's Motion for Order Permitting the Supplementing of the Transcript, deny Plaintiff's Motion for

Summary Judgment, and grant Defendant's motion for summary judgment. Timely objections were filed in this matter. [22].

For the reasons stated below, the Court **ADOPTS** the Report and Recommendation [21]. Plaintiff's Objection to the Report and Recommendation [22] is **OVERRULED**. Plaintiff's Motion for Summary Judgment [14] is **DENIED**. Defendant's Motion for Summary Judgment [15] is **GRANTED**. Plaintiff's Motion for Order Permitting the Supplementing of the Transcript [16] is **GRANTED**.

## FACTUAL BACKGROUND

The R&R summarized the record as follows:

### I. Procedural History

Plaintiff filed applications for a period of disability and disability insurance benefits with a protective filing date of December 11, 2012, alleging that he had been disabled since June 30, 2011. (TR 14; 94-97.) The Social Security Administration denied Plaintiff's claims on March 6, 2013, and Plaintiff requested a *de novo* hearing. (TR 61-64, 67-68.) On April 18, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Timothy Christensen. (TR 31-49.) In a June 25, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 23-24.) The Appeals Council declined to review the ALJ's decision (TR 1-5), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court. (Docket nos. 14, 15.) Plaintiff responded to Defendant's Motion. (Docket no. 19.) Plaintiff also filed a Motion for Order Permitting the Supplementing of the Transcript (docket no. 16), to which Defendant responded (docket no. 18), and Plaintiff filed a Reply (docket no. 20.)

## II. Hearing Testimony and Medical Evidence

Plaintiff (docket no. 14 at 3-13) and Defendant (docket no. 15 at 4-12) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. The ALJ also discusses Plaintiff's medical record and hearing testimony throughout his decision. (TR 16-23.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned incorporates the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

There is a preliminary issue relating to the medical record evidence in this case. In compiling the transcript for the court's review, the Appeals Council excluded a single page from a questionnaire completed by Plaintiff's long-time treating physician, Dr. Mumtaz George, M.D., for the stated reason that "it did not pertain to the claimant." (TR 255.) In his Motion for Order Permitting the Supplementing of the Transcript (docket no. 16), Plaintiff submits the excluded page and presents an affidavit from Plaintiff's attorney's legal secretary, Ms. Maria Carmon, explaining that she erroneously neglected to change the client's name on that particular page before submitting the questionnaire to Dr. George to complete, but that Dr. George's answers on that page in fact do relate to Plaintiff. (Docket no. 16-1.) Plaintiff seeks to include the page in the record for the court's consideration. Defendant objects, arguing that there is no authority to support the supplementation of the record by the court after it has been certified by the Commissioner. (Docket no. 18.) Defendant also disputes that the page actually relates to Plaintiff.

It is apparent from the document that the page pertains to Plaintiff. It was signed by Dr. George the same day as the other pages in the questionnaire, and these other pages do identify Plaintiff as the patient. (*See* Docket no. 16-4 at 4-8). Moreover, the undersigned has no reason to doubt the veracity of Ms. Carmon's affidavit. And, as both parties note, when a claimant commences an action for judicial review, the Commissioner is required to "file a certified copy of the transcript of the record including *the evidence upon which the findings and decision complained of are based*." 42 U.S.C. § 405(g). In this case, the ALJ expressly relied on the excluded page when making his determination, as is evidenced by the fact that he cites to it on page 8 of 12 of his decision. (*See* TR 21 (citing pages 43 and 45 of Exhibit 6F, which is the questionnaire at issue).) The undersigned therefore recommends that Plaintiff's Motion for Order Permitting the Supplementing

of the Transcript (docket no. 16) be granted, and that the court also consider the page to the extent necessary to review this Report and Recommendation.

### III. Administrative Law Judge's Determination

Turning to the substantive issues, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 30, 2011; and that Plaintiff suffered from the following severe impairments: depression, obsessive compulsive disorder (OCD), and anxiety disorder. (TR 16.) Next, the ALJ found that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 16-19.) The ALJ then found that Plaintiff's allegations regarding the extent of his symptoms were not "entirely credible" and that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: . . . would require simple, routine tasks with only occasional changes in the work setting and only brief and superficial contact with others. (TR 19.)

The ALJ questioned a qualified Vocational Expert (VE) regarding whether there would be any jobs available for a person with Plaintiff's RFC. (TR 49-50.) The VE testified that there would be, and gave examples of simple janitorial work, housekeeping/office cleaning, and benchwork including sorting, assembly and product finishing. (TR 46.) Subsequently, in reliance on the testimony of the Vocational Expert (VE), the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 23-24.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 30, 2011, through the date of the decision. (TR 24.)

### STANDARD OF REVIEW

The Court reviews objections to a Magistrate Judge's Report and Recommendation on a dispositive motion *de novo*. *See* 28 U.S.C. §636(b)(1)(c).

Judicial review of a decision by a Social Security ALJ is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into account whatever in the record fairly detracts from its weight." *McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 869 (E.D. Mich. 2005) (quoting *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)). However, so long as the ALJ's conclusion is supported by substantial evidence, a court must "defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

ANALYSIS

Plaintiff sets forth two reasons[1] as to why the Court should decline to adopt the Report & Recommendation: first, the ALJ's decision to accord little weight to the opinion of Dr. Mumtaz George, M.D., Plaintiff's long-time treating physician, was not supported by substantial evidence; and second, the ALJ's credibility finding was not supported by substantial evidence. The Court will discuss both objections.

### I.     The ALJ Properly Disregarded Dr. George's Opinion.

Plaintiff vehemently disputes the ALJ's rejection of the opinion of Dr. George, his long-time treating physician who specializes in internal medicine. Plaintiff argues that in the assessment of Plaintiff's residual functioning capacity ("RFC")[2], the ALJ incorrectly relied on the fact that Dr. George is not a mental health professional. Plaintiff only takes issue with the rejection of Dr. George's opinion regarding his anxiety; he does not challenge the ALJ's rejection of Dr. George's opinion as to his physical limitations.

---

[1] In his Motion for Summary Judgment, Plaintiff argued that Defendant did not meet its burden of establishing that there is other work in the national economy that Plaintiff can perform. Plaintiff did not address this argument in his Objections, and therefore, the Court has no "duty to independently review" that issue. *Murphy v. Lockhart*, 826 F. Supp. 2d 1016, 1027 (E.D. Mich. 2011).

[2] The RFC is an "assessment of [the claimant's] remaining capacity for work despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

Generally, the ALJ must accord great weight to the findings of the claimant's treating doctor. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This is not the case if a treating source's opinions "are unsupported by the medical data in the record, or are inconsistent with other substantial evidence in the record." *Pitts v. Astrue*, 2011 WL 2553340, at *8 (N.D. Ohio May 19, 2011) (citing *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991)). If the treating source's opinion is not accorded controlling weight, the ALJ "must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)[3]). The ALJ must also "give good reasons . . . for the weight [given to the claimant's] treating sources opinions." 20 C.F.R. § 404.1527(c)(2). The ALJ is required to do this "'to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544 (quoting

---

[3] The regulation is now listed as 20 C.F.R. 404.1527(c)(2).

*Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Ultimately, however, the ALJ retains the power to decide whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992).

According to Plaintiff, ALJ Christensen gave no weight to the opinion of Dr. George, Plaintiff's treating physician, because Dr. George is not a mental health professional. Although an ALJ "may consider a treating source's area of expertise in order to determine how much weight to accord to the doctor's opinion, it is not necessarily true that opinions offered regarding matters beyond the physician's specialty should be automatically rejected on such grounds." *Marsh v. Astrue*, 2011 WL 4809271, at *5 (N.D. Ohio, Oct. 11, 2011). The ALJ must provide clear and specific reasons as to why he discounted the treating doctor's opinion. *Id.* (the Commissioner's decision was reversed because, aside from a few vague, conclusory statements, "the ALJ neglected to offer any other insight explaining the reasons why he assigned little weight to [the treating physician's] findings."). The ALJ's reasons must do "more than provide a superficial basis for discrediting [the treating doctor's] findings," and should be "specific enough to apprise [Plaintiff and the Court] of why [the treating doctor's] opinions were being rejected." *Id.*

The Court finds that the ALJ properly evaluated Dr. George's opinion. The ALJ's discussion of Dr. George's opinion is reproduced below:

> The claimant's attorney submits that Dr. George and Dr. Arends conclude that the claimant's impairments meet listing 12.06 because his anxiety

> results in motor tension, apprehension expectation and vigilance and scanning with irrational fear of his medical condition and panic attacks twice per week resulting in marked limitation in social functioning, concentration persistence and pace, repeated episodes of decompensation and deterioration and inability to live independently outside his home. The claimant's attorney states that Dr. George's office visits support his opinion. I find that the claimant has mild restrictions of activities of daily living and moderate limitations in social functioning and concentration, persistence and pace and no repeated episodes of decompensation and deterioration . . . . Further, the claimant has not alleged that he is unable to live independently outside his home. In fact, the consultative examiner noted that he attended the examination alone and unaccompanied.

(TR 16 (internal citations omitted).)

> M. George M.D., who has treated the claimant approximately five times a year since 1992 with his last examination July 11, 2013, issued two medical opinions. Dr. George stated that the claimant's diagnoses are OCD, anxiety, depression, insomnia and rectal bleeding with fatigue and weakness related only to the claimant's insomnia. The claimant did not testify that insomnia was an ongoing limitation. Dr. George checked that the claimant has medical signs and laboratory findings that show the existence of a medical impairment or impairments, which could reasonably be expected to produce the pain or other symptoms alleged but then cites to the claimant's complaints of anxiety, depression, urinary frequency, insomnia, hyperactivity and OCD, none of which are supported by any objective medical tests or treatment that would result in the need for the sedentary or light work limitations indicated by Dr. George. Dr. George issued a separate opinion as to the claimant's anxiety related disorder noting that the claimant has generalized persistent anxiety accompanied by motor tension, apprehensive expectation and vigilance scanning; a persistent irrational fear of a specific object, activity, or situation, which results in a compelling desire to avoid the dreaded object, activity, or situation noting medical situation; recurrent severe panic attacks twice per week manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and impending doom resulting in marked difficulties in maintaining social functioning; deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; repeated episodes of deterioration or decompensation in work or work-like settings, which cause the claimant to withdraw from that situation or to experience exacerbation of

Page **9** of **18**

> signs and symptoms resulting in complete inability to function independently outside the area of one's home.
>
> Dr. George is the claimant's treating physician; the claimant testified that he treated with Dr. Arends for his mental conditions. Therefore, I assign no weight to Dr. George's opinion since Dr. George appears to be addressing [Plaintiff's] mental limitations, which are best addressed by his psychiatrist, Dr. Arends. Further, the record does not support the need for any exertional limitations as set forth by Dr. George.

(TR 21-22.)

This is not a case in which the ALJ merely provided a cursory and perfunctory statement as to why he disregarded the treating physician's opinion.[4] Numerous reasons are present here. First, as the Magistrate Judge rightly pointed out,

> It isn't clear what medical evidence of record supports Dr. George's finding that Plaintiff's anxiety is accompanied by motor tension, apprehensive expectation, and vigilance and scanning, as well as a persistent irrational fear of 'medical situation[s]' or that Plaintiff has 'marked difficulties in maintaining social functioning,' 'deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner,' and '[r]epeated episodes of deterioration or decompensation.'"

(R&R at 11) (citing Tr. 253-254).

The ALJ thoroughly discussed the record evidence from the consultative examination – much of which is inconsistent with Dr. George's findings – and found that 1) Plaintiff had mild restrictions involving rituals and moderate

---

[4] Plaintiff also takes issue with the fact that, after according no weight to Dr. George's opinion, the ALJ then discredited the opinion of Dr. Arends. It is unclear to the Court – and Plaintiff does not explain – how the ALJ's decision was improper in this regard.

difficulties in social functioning, concentration, and persistence or pace; 2) Plaintiff denied needing assistance for his basic needs of food, clothing, and shelter; 3) Plaintiff was able to shop at the grocery store; 4) Plaintiff has one or two distance acquaintances; 5) Plaintiff has experienced no episodes of decompensation of extended duration; and 6) Plaintiff reports suicidal ideations but no current suicidal intent. (Tr. 17-18). The ALJ cited the notes from the examiners, Dr. Bonanno and Dr. Silverman, in support of these conclusions. He also explained that he assigned limited weight to the opinion of Dr. Arends because Dr. Arends' opinion was based on only one visit with Plaintiff. (Tr. 22-23).

There are other inconsistencies among Plaintiff's testimony, Dr. George's opinion, and the record evidence. For example, although Dr. George diagnosed Plaintiff with insomnia, Plaintiff never testified "that insomnia was an ongoing limitation." (Tr. 21). Additionally, in concluding that Plaintiff required sedentary or light work limitations, Dr. George only cited to Plaintiff's complaints of various mental ailments, including anxiety, depression, and OCD; as the ALJ pointed out, however, none of these "are supported by any objective medical tests or treatment that would result in the need for" such limitations. *Id.* Plaintiff also testified that his medications cause drowsiness, while Dr. George stated that there were no side effects. (Tr. 18, 257).

Plaintiff argues that "reliance on a GAF score to reject the opinion of Dr. George would have been erroneous." (Pl.'s Obj. at 5). The Court assumes that Plaintiff is referring to the ALJ's decision to accord great weight to the GAF score of 56, assigned by the consultative examiners, Drs. Bonanno and Silverman. Drs. Bonanno and Silverman "diagnosed OCD, psychological factors affecting medical conditions and rule[d] out cognitive disorder." (Tr. 17). This score "represents moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Id.*

The Sixth Circuit takes "a case-by-case approach to the value of GAF scores." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016). "[W]hile GAF scores are not essential to the RFC's accuracy, [they] nevertheless may be of considerable help to the ALJ in formulating the RFC." *Ali v. Comm'r of Soc. Sec.*, No. 15-14483, 2017 WL 726665, at *13 (E.D. Mich. Jan. 20, 2017), report and recommendation adopted, No. 15-14483, 2017 WL 712899 (E.D. Mich. Feb. 23, 2017) (citing *Miller*, 811 F.3d at 836) (internal quotations omitted).

The ALJ was correct to rely on this GAF score, as it was supported by substantial evidence in the record – specifically, the opinions of Dr. Silverman and Dr. Kaul (Tr. 17, 21). Those doctors noted, and the ALJ considered, that Plaintiff drove himself to the consultative evaluation; was currently taking Xanax; had no past inpatient psychiatric treatment or therapy; performed well on his concentration

tests; and was "capable of low stress simple, routine, one-two step unskilled tasks." *Id.* It was also proper for the ALJ to accord no weight to Dr. Arends' GAF scores because they were unsupported by the record evidence and because Dr. Arends' opinion as to Plaintiff's limitations was based on a single visit. (Tr. 23, 202-03).

It is clear to the Court that, contrary to Plaintiff's assertions, the ALJ's decision to assign no weight to Dr. George's opinion was based on substantial evidence. In overruling Plaintiff's Objection, the Court does not demean or belittle Plaintiff's mental health issues; the Court recognizes Plaintiff's "long history of mental impairments dating back to high school." (Tr. 20). The fact of the matter is that Dr. George's opinions were not well supported and the ALJ was entitled to discredit his findings. *See Pitts*, 2011 WL 2553340, at *9.

## II. The ALJ's Credibility Evaluation

It is well established that the ALJ is responsible for evaluating the credibility of witnesses. *Rogers*, 486 F.3d at 247. This does not mean that the ALJ is free "to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Id.* (citing Soc. Sec. Rul. 96-7). "Rather, such determinations must find support in the record." *Id*. In assessing an individual's credibility, the ALJ considers (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors, (4) the type of dosage, effectiveness, and

side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Although an ALJ's credibility determination is generally entitled to great deference, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Plaintiff challenges the ALJ's determination that 1) Plaintiff told Dr. Arends that his depression had improved; 2) Dr. Arends believed that Plaintiff "sought and obtained treatment with Dr. Arends for the sole purpose of establishing entitlement to disability," which lessened his credibility; and 3) the records from Dr. Arends do not support Plaintiff's testimony that he treated with Dr. Arrends once a month. (Tr. 21, 22). The Magistrate Judge found that the ALJ's decision was supported by substantial evidence, but stated that even if it were not, "the ALJ also discussed other relevant factors in his decision, including the fact that Plaintiff has never received inpatient psychiatric treatment, has only 'mild restriction of activities of daily living,' and 'moderate limitations in social functioning.'" (R&R at 16) (citing Tr. 16, 17). Plaintiff contends that "two of the three other relevant factors cited are

actually just the ALJ's own PRT[5] conclusions, which plainly themselves are not evidence." (Pl.'s Obj. at 8). Plaintiff neither explains nor cites to any authority in support of this statement.

Plaintiff asserts that the Magistrate Judge erred in relying on a selected GAF score, but then states: "even the multiple assignments of low GAF scores in the record belie" the suggestion that he only experienced moderate problems. *Id.* Plaintiff criticizes the Magistrate Judge's reliance on the GAF, but then proceeds to do so himself. As discussed above, there is no sweeping ban on the use of GAF scores and courts are free to examine them on a case-by-case basis. *See Miller*, 811 F.3d at 836.

Plaintiff argues that it was impermissible for the ALJ "to selectively read the record and cherry pick aspects" to support his decision. (Pl.'s Obj. at 9). Specifically, Plaintiff contends that the ALJ only focused on instances of improvement in his history of mental health issues, rather than examining the complete record. While it is certainly true that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding," that is not what happened here. *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013). To the contrary, the ALJ's

---

[5] PRT refers to Psychiatric Review Technique. The technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings." SSR No. 96-8p, 1996 SSR LEXIS 5.

decision shows that he exhaustively considered all of the evidence, including the fact that Plaintiff has a long history of mental health issues, he receives outpatient mental health services, he engages in certain specific rituals, and he reports suicidal ideations. (Tr. 17-20). Furthermore, "the ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position." *Solembrino v. Astrue*, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011).

Plaintiff contends that the ALJ engaged in impermissible speculation when he noted that Dr. Arends' observed that Plaintiff was "too preaware" on certain topics and that "Dr. Arends believes the claimant may have sought and obtained treatment with Dr. Arends for the sole purpose of establishing entitlement to disability, which lessens the claimant's credibility." (Tr. 21). Plaintiff asserts that "the government itself apparently disclaimed [this] idea" (he does not explain how) and concludes that "the ALJ stated *no* basis for the conjecture." (Pl.'s Obj. at 10). The Mental Capacities Evaluation completed by Dr. Arends undermines Plaintiff's argument; Dr. Arends noted on June 10, 2013 that Plaintiff "seemed too preaware on 2 topics 1) controlled substances 2) aware- syntax with disability mentality – language – culture." (Tr. 201). The fact that Plaintiff was "very aware" appears in Dr. Arends' notes a second time; Dr. Arends said that Plaintiff was "very aware [of] categories of controlled substances, [and] has vocab & statements suggestive

of 'disability.'" (Tr. 210). Given that Dr. Arends expressed some concerns as to Plaintiff's motives, it was perfectly reasonable for the ALJ to give less weight to Plaintiff's credibility.

Plaintiff also faults the ALJ for finding that the record did not support his testimony that he saw Dr. Arends once per month. The ALJ found that "the record submitted from Dr. Arends do not support this amount of treatment." (Tr. 22). Plaintiff first treated with Dr. Arends on November 26, 2012, and followed up in November 2013 and January 2014. The ALJ's assessment of the treatment relationship between Plaintiff and Dr. Arends is supported by the evidence in the record (Tr. 203, 260, 262, 265).

The Court declines to disturb the ALJ's credibility determination because there is no compelling reason to do so. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). It is not for the Court to "try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. Appx. 988, 995 (6th Cir. 2007).

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Report and Recommendation [21] is **ADOPTED** and entered as the findings and conclusions of the Court. Plaintiff's Objection to the Report and Recommendation [22] is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [15] is **GRANTED**. Plaintiff's Motion for Order Permitting the Supplementing of the Transcript [16] is **GRANTED**. Plaintiff's Motion for Summary Judgment [14] is **DENIED**.

**SO ORDERED**.

Dated: March 31, 2017

                                         s/Arthur J. Tarnow
                                         Arthur J. Tarnow
                                         Senior United States District Judge